UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADAYSE L. GADDY,<br><br>    Plaintiff,<br><br>v.<br><br>GOVERNOR BILL LEE, et al.,<br><br>    Defendants. | Case No. 3:20-cv-00925<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

This civil rights action brought under 42 U.S.C. § 1983 arises out of pro se Plaintiff Adayse L. Gaddy's incarceration at Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee. (Doc. No. 1.) Gaddy alleges that TTCC officials were deliberately indifferent to the serious risk posed by the COVID-19 pandemic to those housed in TTCC, causing him to contract COVID-19 and to suffer physical and psychological injury. (*Id.*) Defendants CoreCivic, Inc.,[1] Warden Raymond Byrd, and Unit Manager Cortney Crawford have moved for summary judgment on Gaddy's claims against them (Doc. No. 44) and Gaddy has responded in opposition (Doc. No. 54). For the reasons that follow, the Magistrate Judge will recommend that the motion for summary judgment be granted.

---

[1] CoreCivic, Inc., is a private for-profit corporation that contracts with the Tennessee Department of Correction to operate TTCC. *See generally Trousdale Turner Correctional Center*, CoreCivic, https://www.corecivic.com/facilities/trousdale-turner-correctional-center (last visited Oct. 9, 2022).

I. **Background**

   A. **Factual Background**[2]

The events underlying Gaddy's claims took place in the spring of 2020 while Gaddy was incarcerated at TTCC. (Doc. No. 1.) Gaddy states that, "months after the Coronavirus Pandemic was made public throughout the world" and "the CDC stated that . . . masks" and "the use of hand sanitizer prevented the spread" of COVID-19, TTCC staff "were not using PPE." (Doc. No. 1, PageID# 11, ¶ 9.) Gaddy states that TTCC staff did not give incarcerated people masks, hand sanitizer, hand soap, or bleach. (Doc. No. 1.) Gaddy also states that TTCC was understaffed, employed staff from other states, and failed to test staff for COVID-19 on a daily basis. (*Id.*) Gaddy asserts that TTCC staffs' failure to wear masks and provide incarcerated people with masks and cleaning supplies was the consequence of CoreCivic's failure to train TTCC staff on COVID-19 protocols. (Doc. No. 1.)

Defendants disagree with Gaddy's assertion that people incarcerated at TTCC were not given masks or cleaning products and state that they received "multiple face masks," "additional soap for their cells," and "access to other cleaning supplies." (Doc. No. 49, PageID# 276, ¶ 7.) Defendants assert that numerous other actions were taken to stop the spread of COVID-19 at TTCC, including a full facility lockdown, quarantine and screening of new arrivals, increased cleaning of the facility, social distancing, testing of every incarcerated person, and education on

---

[2]  The facts in this section are drawn from Gaddy's verified complaint (Doc. No. 1), the defendants' summary judgment exhibits (Doc. Nos. 46–48), and the defendants' statement of undisputed material facts (Doc. No. 49*). See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (holding that a verified complaint carries the same evidentiary weight as an affidavit for purposes of summary judgment). Gaddy filed a document titled "Amendment of Pleadings" on September 10, 2021. (Doc. No. 32.) This filing did not move to amend the complaint or include a proposed amended complaint and so did not comply with Federal Rule of Civil Procedure 15 or this Court's Local Rule 15.01 to become the operative pleading. That filing also was not verified and so is not considered as part of the summary judgment record.

COVID-19 precautions. (Doc. No. 49.) Defendants state that all CoreCivic employees were trained on the practices implemented to stop the spread of COVID-19 and that Byrd personally encouraged and required CoreCivic employees to follow these policies. (Doc. No. 49.)

On April 28, 2020, Gaddy took a COVID-19 test (Doc. Nos. 1, 48) as part of facility-wide testing (Doc. No. 46). Gaddy states that, on April 30, 2020,[3] Crawford told Gaddy that he tested positive for COVID-19.[4] (Doc. No. 1.) Gaddy states that Crawford then moved incarcerated people who had tested positive into a different housing pod containing people who had tested negative or who had no test results. (Doc. No. 1.)

Defendants state that Gaddy's April 28, 2020 test was negative and have provided a copy of the negative test result as an exhibit to their summary judgment briefing. (Doc. Nos. 48, 49.) Defendants further state that, while complete segregation of people who tested positive for COVID-19 at TTCC was not possible due to health and safety concerns, no one who tested negative for COVID-19 was housed in the same cell as someone who tested positive. (Doc. No. 49.)

On April 2, 2020, Gaddy filed a grievance alleging that TTCC staff were not wearing masks or providing masks, hand sanitizer, hand soap, or bleach to incarcerated people. (Doc. No. 1.) Gaddy asserts that Byrd, who became Warden in April 2020[5] (Doc. No. 46) after Gaddy filed his initial grievance, did not address Gaddy's grievance adequately (Doc. No. 1). Byrd responded to

---

[3] Gaddy states that this took place on "April 31, 2020."

[4] In Gaddy's September 10, 2021 filing entitled "Amendment of Pleadings" he alleges that he contracted COVID-19. (Doc. No. 32.) The document, which was not filed in accordance with the rules, will not be considered as record evidence. *See* Fed. R. Civ. P. 15(a)(2); M.D. Tenn. R. 15.01 (motions to amend pleadings).

[5] The Complaint and attached grievance documentation indicate that Byrd assumed the role of Warden of TTCC between April 2, 2020, and April 24, 2020. (Doc. No. 1.)

Gaddy's appealed grievance on June 15, 2020, stating that "[i]t is mandatory to wear PPE and will continue to be addressed." (Doc. No. 1, PageID# 20.)

**B.     Procedural Background**

Gaddy initiated this action by filing a verified complaint alleging claims under 42 U.S.C. § 1983 against Governor Bill Lee, Tennessee Department of Corrections (TDOC) Commissioner Tony Parker, Assistant TDOC Commissioner Lee Dotson, Byrd, Crawford, CoreCivic, and the State of Tennessee. (Doc. No. 1.) The Court conducted an initial review of Gaddy's complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915A and 42 U.S.C. § 1997e, and found that Gaddy had stated colorable Eighth Amendment claims against CoreCivic and against Byrd and Crawford in their individual and official capacities for deliberate indifference to his medical needs. (Doc. No. 6.) The Court dismissed Gaddy's claims against Governor Lee, Commissioner Parker, and Assistant Commissioner Dotson in their individual and official capacities. (*Id.*)

CoreCivic, Byrd, and Crawford have now moved for summary judgment on Gaddy's claims against them. (Doc. No. 44.) The defendants argue that summary judgment should be granted on Gaddy's claims against CoreCivic because Gaddy cannot show that his Eighth Amendment rights were violated as the result of "an official policy or a pervasive, widespread custom." (Doc. No. 45, PageID# 209.) They also argue that Byrd and Crawford are entitled to summary judgment because Gaddy did not establish that they were deliberately indifferent to the serious risk posed by COVID-19 and because there is no evidence to establish that Gaddy suffered a physical injury. (Doc. No. 45.)

Gaddy filed a response to the defendants' motion. (Doc. No. 54.) In it, Gaddy reiterates that Byrd and Crawford did not enforce COVID-19 protocols, raises questions about the veracity of the negative April 28, 2020, COVID-19 test result produced by defendants, and states that he

will prove physical injury at trial. (*Id.*) Gaddy did not respond to the defendants' statement of undisputed facts. The defendants replied to Gaddy's response, arguing that, due to Gaddy's failure to respond to the statement of undisputed facts, the facts in the defendants' statement must be deemed undisputed. (Doc. No. 56).

II.     **Legal Standard**

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

**III.     Analysis**

**A.     Local Rule 56.01 and the Defendants' Initial Burden Under Federal Rule of Civil Procedure 56**

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Under this rule, "[e]ach fact must be set forth in a separate, numbered paragraph [and] . . . must be supported by specific citation to the record." *Id*. Any party opposing a motion for summary judgment must specifically respond to each asserted fact by: "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). "The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set

forth by the movant" and "must be filed with the papers in opposition to the motion for summary judgment." *Id*. "If a timely response to a moving party's statement of material facts . . . is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment." M.D. Tenn. R. 56.01(f) (failure to respond).

Pro se parties are not excused from complying with this rule. *See* M.D. Tenn. R. 56.01(b)–(c). Indeed, the Court's scheduling order in this action warned the parties that "failure to respond to the motion for summary judgment in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules may result in a recommendation that the motion be granted as unopposed or the action be dismissed for failure to prosecute." (Doc. No. 50.) The defendants filed a statement of undisputed material facts that complies with the requirements of Local Rule 56.01(b) and includes citations to Byrd's declaration, Crawford's declaration, and the declaration of TDOC Medical Records Clerk Misty Marshall. (Doc. No. 49.) Gaddy did not respond to the defendants' statement of undisputed material facts as required by Local Rule 56.01(c). (Doc. No. 54.)

The defendants are correct that, because Gaddy did not respond to it, Local Rule 56.01(f) requires the Court to take their statement of undisputed material facts as true. However, Gaddy's failure to specifically respond to the defendants' statement of undisputed material facts does not automatically entitle the defendants to summary judgment. The defendants still must carry their initial burden to show an absence of any genuine dispute of material fact under Federal Rule of Civil Procedure 56. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not

necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2020). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (3d ed. 2020). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."); *see also Evans v. Plummer*, 687 F. App'x 434, 446 (6th Cir. 2017) (viewing defendant's summary judgment evidence in light most favorable to plaintiff, finding it insufficient, and affirming, in part, district court's denial of summary judgment). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Adickes*, 398 U.S. at 161 (quoting 6 James Wm. Moore et al., Moore's *Federal Practice* § 56.22(2) (2d ed. 1966)); *see also Evans*, 687 F. App'x at 446 (affirming, in part, denial of summary judgment where cited video evidence was insufficient to satisfy defendant's initial burden and plaintiff's opposition did not address that evidence); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2020) ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

### B. Gaddy's § 1983 Claims

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (second alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a claim under § 1983, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015) (*quoting Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Gaddy alleges that CoreCivic, Byrd, and Crawford were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The defendants argue that they are entitled to summary judgment because the record evidence does not support Gaddy's claims that they violated his Eighth Amendment rights or that CoreCivic's policies caused such a violation.

The question before the Court at summary judgment is whether there is a genuine issue of material fact that the defendants deprived Gaddy of his Eighth Amendment rights.

#### 1. Claims Against CoreCivic

A private entity performing a government function "can be found liable under § 1983 . . . where the [entity] itself causes the constitutional violation at issue" through the execution of its policies or customs. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978)). The overarching question in resolving such claims is "whether there is a direct causal link between [the entity's] policy or custom and the alleged constitutional deprivation." *Id*. Courts in this circuit follow a two-pronged inquiry to resolve that question. *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (citing *Cash v. Hamilton Cnty. Dep't of Adult Prob*., 388 F.3d 539, 542 (6th Cir. 2004)); *Doe v. Claiborne Cnty*., 103 F.3d 495, 505 (6th Cir. 1996). The court first asks

whether the plaintiff has asserted the deprivation of a right guaranteed by the Constitution or federal law. *Powers*, 501 F.3d at 607 (first citing *Cash*, 388 F.3d at 542; and then citing *Alkire*, 330 F.3d at 813). Second, the court asks whether the defendant entity is "responsible for that deprivation." *Cash*, 388 F.3d at 542 (citing *Doe*, 103 F.3d at 507); cf. *Powers*, 501 F.3d at 607.

Under the first prong of the analysis, a court must consider whether the plaintiff has asserted "rights [that] are federally protected such that, if proven, § 1983 will provide relief for their infringement." *Powers*, 501 F.3d at 607; *see also Cash*, 388 F.3d at 542 ("First, the court must determine whether the plaintiffs have asserted the deprivation of a constitutional right." (*citing Doe*, 103 F.3d at 505)). Importantly, this prong asks the court to "examin[e] the nature of the right claimed to have been infringed upon" and not to determine the merits of the claim. *Doe*, 101 F.3d at 506; *see also* Cash, 388 F.3d at 542 ("The threshold question is 'whether the interest at stake is within the Fourteenth Amendment's protection of liberty and property.'" (*quoting Arnett v. Myers*, 281 F.3d 552, 564 (6th Cir. 2002))). Here, Gaddy has asserted a federally protected right because the Eighth Amendment gives incarcerated people the right to adequate medical care while in custody. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).

Gaddy's claims fail, however, on the second prong of the inquiry, in which plaintiffs "must 'identify the policy, connect the policy to the [municipal entity] itself and show that the particular injury was incurred because of the execution of that policy.'" *Graham ex rel. Estate of Graham v. Cnty. Of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). Four types of policies or customs can provide the basis for a Section 1983 claim:

> (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). "The Sixth Circuit applies specific inquiries for . . . claims based on each theory to determine whether plaintiffs have identified a custom or policy, connected the policy to the defendant . . . entity, and shown that the custom or policy was the moving force behind the alleged injury as required." *Whitworth v. CoreCivic, Inc.*, No. 3:17-cv-01121, 2019 WL 1427934, at *13 (M.D. Tenn. Mar. 29, 2019); *see also Connick v. Thompson*, 563 U.S. 51, 61–63 (2011) (articulating standard for failure-to-train theory); *Thomas*, 398 F.3d at 429 (articulating four-part inquiry for claims based on inaction theory).

Gaddy alleges that CoreCivic failed to train TTCC staff in practices to address the spread of COVID-19 within the facility. (Doc. No. 1.) "Inadequate training can be the basis for a § 1983 [government entity] liability claim when it 'amounts to deliberate indifference to the rights of persons with whom the [officials] come into contact.'" *Snead v. Corecivic of Tenn., LLC*, No. 3:17-cv-00949, 2020 WL 6469995, at *25 (*quoting Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017)). However, a government entity's "'culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Id*. (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). To prevail on such a claim, a plaintiff must show: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [government entity's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Id*. (quoting *Roell*, 870 F.3d at 487). To satisfy this standard, Gaddy must demonstrate "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

The defendants' statement of undisputed material facts (Doc. No. 49), supported by Byrd's declaration and not contested by Gaddy, establishes that CoreCivic employees are required to complete a minimum number of hours of training before beginning an assignment and must also complete annual ongoing training. (*Id.* at ¶ 6.) This included education and training on practices implemented to combat the spread of COVID-19 at TTCC. (*Id.* at ¶ 10.) The defendants cite the following specific "customs to which CoreCivic adhered during the COVID-19 pandemic":

- In March 2020, the [TTCC] was placed on lockdown, and inmates were not permitted to leave their cells except to shower and to use the telephone.

- New arrivals to [TTCC] (*i.e.*, incoming inmates) were quarantined for fourteen days prior to placement in the general population.

- All inmates received multiple face masks and additional soap for their cells. They also received access to cleaning supplies.

- Staff conducted temperature checks on all inmates at least twice per week. Any inmate exhibiting a high fever immediately was escorted to medical for additional COVID-19 screening and treatment. Inmates were provided appropriate access to medical treatment.

- The cells, housing units, and all areas of the facility routinely and appropriately were cleaned. Staff used a chemical fogger to disinfect all living areas and housing units at least three times every day.

- To avoid high contact situations, the chow hall was closed, and individual, prepackaged food trays were delivered to inmates in their cells.

- To promote social distancing, the medical waiting room capacity was reduced to ten people.

- The capacity of the shower and telephone areas were reduced, and inmates were scheduled for showers and telephone calls in increments of three groups per pod per day.

- Inmates were allowed to use the showers and telephones in small, socially distanced groups. Furthermore, the shower and telephone areas were thoroughly cleaned after each use.

- All "essential workers" tasked with cleaning the shower and telephone areas were equipped with additional personal protective equipment, including masks, gloves, and scrub suits.

- The legal library was made available by appointment only. However, to promote access to legal materials, staff wearing personal protective equipment

- visited inmate cells in order to deliver certain legal documents and books for those inmates with ongoing cases in the courts.
- Visitation and group programming were suspended.
- Every inmate at [TTCC] was tested for COVID-19.
- Employees and inmates were educated on COVID-19 and the precautions that [TTCC] was taking in order to protect the employees and inmates.
- Inmates were offered vaccinations in January and February 2021.

(*Id.* at ¶ 7.)

It is also undisputed that, "[d]ue to serious security concerns, including inmate compatibility, the safe transfer of inmates between pods, and the potential to further increase the spread of COVID-19, a complete segregation of all inmates who tested positive for COVID-19 at [TTCC] was not feasible." (*Id.* at ¶ 8.) However, "[n]o inmate at [TTCC] who tested negative for COVID-19 was housed in the same cell as an inmate who tested positive for COVID-19." (*Id.* at ¶ 9.) Gaddy cites no record evidence to dispute that CoreCivic implemented these practices or that it did not adequately train TTCC staff to ensure that they were properly followed.

Summary judgment on Gaddy's failure-to-train claim is also appropriate because Gaddy has not introduced any evidence to dispute the defendants' undisputed evidence that he did not test positive for COVID-19 and, thus, has not suffered any injury as the result of CoreCivic's policies or customs. (*Id.* at ¶¶ 13, 14.) To prove the existence of an unconstitutional policy or custom, including the failure to train staff, Gaddy must show that a "particular injury was incurred because of the execution of that policy.'" *Graham ex rel. Estate of Graham*, 358 F.3d at 383 (quoting *Garner*, 8 F.3d at 364). Gaddy's verified complaint states that, after being tested for COVID-19 on April 28, 2020, he "was told by . . . Crawford that [he] tested positive for COVID-19," that he was "injured in his health," and that he was "subjected to misery, mental anguish, mental pain, emotional harm, and psychological stress and trauma." (Doc. No. 1, PageID# 12, 15.)

The defendants have provided copies of two COVID-19 tests taken by Gaddy while at TTCC. (Doc. No. 49.) The first test was administered on April 28, 2020, and its negative result was reported on April 29, 2020. (Doc. No. 48-1.) The second test was administered on August 14, 2020, and its negative result was reported on August 25, 2020. (Doc. No. 48-2.) These test results are undisputed for purposes of summary judgment under Local Rule 56.01. Gaddy also has not offered "significant probative evidence" to rebut them by showing that he tested positive for COVID-19 or that he suffered any symptoms or other specific physical injury.[6] *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248); *see also Byrd v. Drs.*, No. CV 18-8769, 2020 WL 4589057, at *4 (C.D. Cal. July 13, 2020) (finding plaintiff's alleged injury of being misdiagnosed with hepatitis C insufficient to state physical injury); *McDonald v. Dallas Cnty. Jail*, No. 3:20-CV-02853-D, 2021 WL 3744093 at *3 (finding plaintiff who alleged that he was told by a laughing corrections officer that he had COVID-19 but did not allege that he was ill had not alleged physical injury).

CoreCivic is entitled to summary judgment because it has shown no genuine issue of material fact that Gaddy suffered any injury as the result of its policies or customs.

---

[6] Courts have considered similar allegations in determining whether an incarcerated plaintiff met the physical injury requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), and have found those allegations insufficient in that context. *See Yoder v. Stevenson*, No. CV 20-12992, 2021 WL 6973839, at *5 (E.D. Mich. Dec. 20, 2021) (finding plaintiff did not meet the physical injury requirement because he alleged psychological injury, not COVID-19 infection); *Ballew v. Knox Cnty.,* No. 3:20-CV-490, 2021 WL 3276371, at *2 (E.D. Tenn. July 30, 2021) (finding plaintiff did not meet the physical injury requirement because he did not allege COVID-19 infection, only a flu infection that the court found to be *de minimis*); *Arnold v. St. Clair Cnty. Intervention Ctr.,* No. CV 20-11410, 2020 WL 4700812, at *4 (E.D. Mich. Aug. 13, 2020) (finding plaintiff did identify physical injury because he did not allege COVID-19 infection).

## 2. Individual Capacity Claims Against Byrd and Crawford

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Berkshire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). A deliberate indifference claim against an individual actor has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore*, 390 F.3d at 895. The objective component requires showing the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quoting *Blackmore*, 390 F.3d at 897). An incarcerated person may also show "that he is incarcerated under conditions posing a substantial risk of serious harm*.*" *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970.) The subjective component requires a plaintiff to show that the prison official had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). Courts determine this subjective component "'in light of the prison authorities' current attitudes and conduct.'" *Id*. (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). This showing "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."

*Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

The defendants do not dispute that the objective prong of the deliberate indifference standard is satisfied. The issue that remains is whether Byrd and Crawford have demonstrated that there is no issue of material fact regarding the inquiry's subjective prong.

In his opposition to the defendants' motion for summary judgment, Gaddy argues that Byrd "witnessed his staff not wearing masks" after Gaddy had filed a grievance that staff were not wearing PPE "and didn't address the complaint which makes him responsible." (Doc. No. 54, PageID# 291.) Gaddy argues that Crawford "is responsible for day to day living and by placing inmates deemed negative with inmates deemed positive in cells together placed us at high risks." (*Id.*) Gaddy also states that Crawford "didn't enforce mandatory lockdown and quarantine as well as social distancing and not providing inmates adequate protection with masks, sanitizer, etc. for combatting this deadly virus." (*Id.*)

In his verified complaint—which is the only evidence Gaddy has offered in the summary judgment record—Gaddy makes no specific allegations as to Byrd's conduct. The defendants have established through their statement of undisputed material facts that Byrd "personally encouraged and required CoreCivic employees to follow Tennessee Department of Correction and CoreCivic policies, as well as COVID-19-specific practices and protocols" and "never instructed or encouraged any CoreCivic employees to stop wearing personal protective equipment, and he never instructed or encouraged any employee to place inmates who tested positive for COVID-19 into the same cell as an inmate who tested negative for COVID-19." (Doc. No. 49, ¶ 11.) Because Gaddy offers no evidence otherwise and no evidence to establish Byrd's specific conduct his Eighth Amendment claim against Byrd in his individual capacity must fail.

Gaddy's verified complaint alleges that Crawford "acting in her official capacity" told Gaddy that he tested positive for COVID-19. (Doc. No. 1, PageID# 12, ¶ 11.) Gaddy further alleges that Crawford

> acted on this information deciding to move prisoners who had been just rendered positive for [COVID-19] from Echo-Alpha to be housed in the same pod with prisoners that were negative or had no results in regard to their status, without the prisoners rendered positive initially being subjected to quarantine and without moving negative prisoners out in Echo-Alpha in which this also shows more negligence and incompetence in this matter.

(Doc. No. 1, PageID# 13, ¶ 11.)

Gaddy does not allege in his verified complaint that Crawford moved him into a pod with people who had contracted COVID-19.

The defendants do not address whether Crawford told Gaddy that he had tested positive for COVID-19. For the reasons set out above, however, such a statement, without more, would be insufficient to establish that Gaddy suffered an actionable injury. Regarding the housing of those who had tested positive for COVID-19 in the same pod as those who had tested negative, the defendants provide Crawford's declaration statement that she "assisted in the movement of inmates between housing units as part of [her] responsibilities as a Unit Manager at [TTCC]" but "did not have the authority to establish either housing or health and safety policy for CoreCivic, Inc. at [TTCC]." (Doc. No. 47, PageID# 266, ¶ 4.) The defendants have also established that "serious security concerns" prevented "a complete segregation of all inmates who tested positive for COVID-19" at TTCC and that no one housed at TTCC "who tested negative for COVID-19 was housed in the same cell as an inmate who tested positive for COVID-19." (Doc. No. 49, PageID# 277, ¶¶ 8, 9.) These undisputed assertions are sufficient to establish no genuine issue of material fact that Crawford acted with subjective deliberate indifference to Gaddy's medical needs or otherwise caused him injury for purposes of an Eighth Amendment claim.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the motion for summary judgment filed by Defendants CoreCivic, Byrd, and Crawford (Doc. No. 44) be GRANTED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 14th day of November, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge